Good morning again. Good morning again, your honors. May it please the court. Margaret Farrand appearing on behalf of the defendant and appellant, Darra Kitchen. The electronic search condition that was imposed on Miss Kitchen in this case was unreasonably burdensome and intrusive relative to her offense and her criminal history. I want to focus the court on the three factors that bear on this analysis. The nature of her offense, the nature of the electronic search condition, and the nature of the privacy interests that were implicated by that condition. Her offense, she stole 30 pieces of paper mail. Her prior offenses, petty theft of items amounting to $361. No history of violence, no history of using electronics to commit or conceal any crime. Nor was there any history of anything about her. The nature of the electronic search condition in this case, it applies to all of her electronic devices. But only if there's reasonable suspicion that she violated the conditions of her release and that there be evidence of that on the device. So it actually seems pretty narrow, so I'm not understanding really why you think this is such a big imposition on her liberty. I'd like to point to two things. Okay, first of all, the idea that there needs to be reasonable suspicion that the evidence of the violation will be found on her device is not clear. It's ambiguous. Isn't that what the condition says? No, it says areas. The areas to be searched contain evidence of the supervised release. But isn't that what, I mean, wouldn't the device be the area in that context? Well, is a device an area? And I think that's really not clear, and I direct the court to Lara. Well, but your whole challenge is based on the idea that this is going to let them search her devices, so I'm a little confused. It is going to let them search her devices, but I think what Your Honor is talking about is a purported limitation on that ability to search. If there doesn't need to be reasonable suspicion that evidence of the violation will be found on the device, it becomes even broader. And I think that it's at the very least unclear whether a cell phone or a computer is an area to be searched. And I... I'm with you in terms of the disconnect in her crime. Stealing mail and the cases cited by the government almost all deal with uses of computers in connection with the crime and a likely continuation of it. I find no connection to the mail. But as my colleague had just pointed out here, there is a condition on the use of this unusual and maybe not so unusual condition, and that is that there has to be reasonable suspicion that she is if she's committing a crime dealing with stealing mail. That doesn't make any sense. How does... How do we... Are we supposed to coordinate this condition in condition number nine to make it work or not work? The condition doesn't say there has to be reasonable suspicion that she's committed a crime. It has... It says there must be reasonable suspicion that she's violated a term of her supervised release. That could be anything. That could be failing to show up for an appointment. There could be missing a drug test, negative bad result on a drug test, not doing sufficient community service. There's been no showing as to why searching her phone or her computer would help to detect any of those violations. Those would be apparent... Isn't that similar though, as you well know? We get conditions that... Where the defendant has to agree to a complete search without a warrant of everything in the house and cars and all that sort of thing. Isn't that somewhat similar to this? I don't know. First of all, she didn't agree to anything. She had no plea agreement in this case. She never agreed to anything. This condition was imposed on her without any real discussion by the district court. And the only mention of any reason for this condition focused on the crime itself, theft. All that was said by probation, the government and the court was, it's appropriate in light of the theft. So it seems that everyone was focused on the nature of her offense. But it's not if you assume that this areas thing does refer to the devices, let's just assume that for a second. Can you explain why it's such an imposition on her liberty beyond what's appropriate for supervised release to say that she shouldn't have devices searched if there's reasonable suspicion that the devices show that she's violating her supervised release? I think the reason is it's a computer or a cell phone which contain enormous amounts of information of every single kind. Even though there's a reasonable suspicion that's put into the condition, the Supreme Court in Riley recognized that that's really no practical limitation at all. A creative officer can always think of a reason. It would be a particularly inexperienced or unimaginative law enforcement officer who couldn't come up with a reason why there's reasonable suspicion to think that evidence of just about anything might be on her device at any time. And I wanna focus the court on 35... I guess I'm not understanding that. So I don't think... If some officer just said you're walking down the street, I think that's reasonable suspicion that I should search your phone. I don't think that would hold up if they found something. So I don't know. I mean, reasonable suspicion is a standard that we have lots of cases about. I mean, I don't think it is nothing. Well, I think there could be reasonable suspicion that she's done any number of innocuous things would constitute a violation of her other supervised release conditions. Why so? Can you give an example? Well, she missed a counseling appointment. That would be a violation of her supervised release. At any time, there's probably going to be evidence of that on her phone because her phone has a log of every single place she's been in the last... ever since she got the phone. Our phones automatically... I mean, if they have already reason to think she missed the violation of her supervised release, maybe that means they should be able to check and... I mean, I'm not sure why that... I think that weighs the other way, though, Your Honor. If there's already evidence to think that she's missed her... that she's violated her supervised release, then it's unduly burdensome to search her phone because there's no need for it anymore. I think that 35... Not really. I mean, I'm a district judge and it's often the probation officer will confront the defendant and say, I think that you missed your appointment, but they don't necessarily have enough proof and the defendant denies it and then they get some additional proof. They call the treatment center and then they confront the defendant again who then admits it. So what about the condition of not associating with known felons, which could include her... the two other women who were involved in this crime? Wouldn't searching her emails and her text message history show that she's violating that condition and isn't that something the probation officer should be able to look into if he has suspicion that he's associating with those co-conspirators? In that instance, maybe so, but I think the problem is I'm... it may be appropriate to search her devices to some degree or at least some portions of those devices to discover violations of her supervised release, but there's a problem here in that the district court never spelled out what that nexus or that relationship was and the reason that... there needs to be some kind of a consideration or explanation by the district court because these devices implicate such extreme privacy concerns and they contain so much information. Was it necessary... is it necessary to let the officer search every file name, every email account? Maybe it is, I don't know, but the district court has a role to play in that analysis of ensuring that it's reasonably related to her circumstances, her crime. If you were the district judge and you were writing this condition, how would you write it? I think I would say reasonable suspicion, first of all, that the... that the device to be searched would continue... I would make that clear and I think I would also just as a district court judge spell out why the condition is necessary and how it's related. I want you to continue on how you would write this, that the device would what? In other words, write this for us, say you're the district judge now, you don't have a condition, what do you say? Reasonable suspicion that the... that the particular email account or file names or folders contain evidence of a supervised release violation that cannot be reasonably obtained through other means. I think that's what I would say. Okay, but aren't you going beyond what normally is required? As was pointed out by Judge Bastian, she has some co-conspirators. She's not supposed to be involved in that. What's so unusual about that? What's different between that and the right, for example, to search your home without a warrant if you're a convicted felon? I think it's categorically different and Riley says that. The Supreme Court has held that searches of devices are in a category of their own. They implicate vastly different privacy interests. But in that situation, the Supreme Court is recognizing that also in Carpenter that these devices play a huge role in our deal. But in this particular case, there's really no expectation of privacy in the same way, is there? That's just kind of a blanket search in an automobile stop. I don't know why there wouldn't be an expectation of privacy, Your Honor, in her devices. I mean, she definitely has an expectation of privacy in those devices. But I think... I mean, so devices might have more privacy, but she's in a different category of just... I mean, she's on supervised release, so I Well, I think that in Knight's, there was a nexus because in... Well, actually, I'm sorry, in Knight's, I don't believe there was a computer... Well, there wasn't a computer, but if you can search their home, their papers, their everything, and there's reason to make sure they're not committing other crimes and they're safe in the community, all these things that Knight says, it's... I mean, yes, it's a device, but I'm not sure that that makes a big difference. Well, I think the Supreme Court in Riley differs with that, Your Honor. I think the or another container is as different from a search of a computer as a cart ride is from a flight to the moon. It's very different. But, Your Honor, I think I'd like to return to your question, too, about how would I rewrite this condition. I might also put in the probation officer may search the entire device if it's not reasonably practical to narrow it further. In Hill and Tamura and the computer search cases from this court, the court says it may sometimes be necessary for officers to search an entire device, but there should first be an effort by the court to narrow as search as possible. And I think that mirrors 3553A, narrowly tailored, no more restrictive than necessary. Is it necessary for such a minor crime to have such a broad search capability? All right. Thank you very much. Let's hear from the government. Good morning, Your Honors. May it please the court. Ashley All for the United States. The district court did not abuse its discretion by imposing this condition, and it did not plainly err by failing to explain it adequately. It's going first to the substance of the condition. Really, the defendant's best argument is that cell phones are somehow different. Because if we were just talking about a search of person or property, there would be no way for the defendant to maintain this argument. Betz forecloses it. Samson forecloses it. A number of cases foreclose it. Cell phones are not so sui generis in this context. One, because as we discussed, as the court was discussing, this condition requires reasonable suspicion to believe the defendant is out of compliance with the terms of first supervised release and that it will be found in the areas to be searched. Defendant's construction of that condition in order to create ambiguity, in order to then find that it's overbroad, I think isn't supported by the record. The PSR, the probation office at PSR 34 explained that this is a narrowly tailored search condition. But I guess what I'm struggling with, all the cases that you cite, including which, which of course is not a, not a published opinion, you've got Reardon, you've got Betz, all these cases, and all of them involve situations where the use of the computer is an important element of it. Here's, this woman stole mail. Has they are an essential part of virtually everyone's life. You can go to other parts of the world where people have hardly enough to eat and they got a cell phone. It's such a key element of our lives. And given the instruction that the statute puts on this, it seems to me we're really struggling with just how far this goes. What seems to save it possibly is the condition, the reasonable suspicion concept. But I'm still troubled by that. I don't find your cases persuasive. I really don't. How, how, how, if you were the district judge, would you write it, this condition, exactly the same way that this district judge did? Or would you tailor it in some way? I would, Your Honor. I think this condition gets to the essence of what probation officers do for this condition. It would mean that the defendant is on exactly the same footing as someone who is not on supervised release. That is to say, absent a warrant supported by probable cause, her devices could not be searched. That is completely inconsistent with the Supreme Court's analysis of the privacy rights at issue. And, Your Honor, I think the best case to deal with the concerns you articulated, it's a, is Johnson. Johnson is this court's case analyzing a suspicionless search of a parolee's cell phone and found it was reasonable under the circumstances. And parole, the parole condition at issue there, is imposed by default in California. There's no option to, to impose it or not. It has nothing to do with the character of the underlying crime. So long as it is a parole-eligible crime, that is a standard condition. The same was true in Sampson. In Sampson, that was person or property, not computers specifically. That condition of parole is imposed by default. So you're saying that Johnson stands for the proposition that it really doesn't matter what the underlying crime is, it's just a standard condition? That's the way it is. Certainly for Fourth Amendment purposes. Now there, there is of course 3853, which requires that there be some nexus to deterrence, rehabilitation, and protection of the public. But none of those go to the particular crime. It's clear under Bayer and under this court's other precedents, there does not need to be a factual nexus to a particular crime. And King is a great example of this. King emphasizes that a defendant's history of violation of supervised release is a, is something that obviously goes to the interest in deterrence and protection of the public. That is by, by far, I think that is the most profound interest supported by the record here. Defendant had a very long, very serious history of violating terms of supervision, going back to when she was 13. And this case itself demonstrates that. She absconded from pretrial supervision one day after being released and was brought back on a warrant. So there was a profound interest in supervising her. I'm sure the court has read the transcript of the sentencing. Her ability to comply with supervised release and whether or not that term would help her become a functional member of society was the number one concern on the district court's mind. That said, I do want to push back a little bit on the idea that mail theft has nothing to do with computers. I will not dispute that her, her thefts did not. There was no computer involved. But as she told the probation officer, I think it's at PSR paragraph 12 or 14, she knew that this material was being used to put profiles together. Mail theft is step one in identity theft. And as the government set forth in its, in its own sentencing position, there is an access to PII, other things being stolen. I'm not going to dispute that there wasn't a computer here, but to say that it has nothing to do with a realm in which you might find evidence on a computer, I think it's one bridge too far. Is that in the record? I get your point. Somebody steals mail, they may get some information, allows them to have identity theft, which might involve the use of a computer. But is that in the record anyway? She, so I, she admitted at PSR paragraph 15 that she knew it was being used to put profiles together. And then the, and then the government in its, this is not, I mean this is argument, but the government in its sentencing position emphasized that ER 46, the sort of the nexus to identity theft. Was she doing that though, or was she just stealing the mail and then giving it to her? Her claim, though the court doesn't need to believe it of course, is that she was giving the mail to someone else who was making the profiles, and she claimed some ignorance as to what those profiles were. But she knew it was being used to make profiles. But in any case, there does not need to be a nexus to the particular offense. It does not need to be the case that the particular offense involved a computer. It is adequate here that she had this long history of supervised release violations that certainly made it reasonable for the district court to impose this condition that put her on frankly better footing than she would be required to be under the Supreme Court's precedence. When it was first, so we now know, we haven't talked about mootness yet, but we now know there have been various violations and re-imposition. Had she, when they first imposed this, had she already violated? He had violated her, she absconded from pretrial release. So that had already happened. So, and again, it was within a day of being released. And so she was, so she had that violation. She now has two more violations. I'll only address mootness if the court wants to. Do you think that's necessary? So, I mean, part of the mootness question might be like, can this challenge be made by someone else or in another context? Or like, even if it's not capable of repetition and evading review for her, or it might be capable of repetition and like how much her particular facts are necessary to your defense of this provision. Or whether your defense is really, anyone on supervised release could have this condition. It kind of explains itself. It's reasonable on its own. I, that is our position, but I don't think the court needs to go that far. I certainly think as a Fourth Amendment matter, it's reasonable on its face. As far as 3853 is concerned, that may as a statutory matter require some nexus to the public. It's hard to imagine a situation in which this wouldn't have that nexus, but I don't think the court has to go so far as to hold that per se in every case this would be a reasonable and adequate condition. But if we need to get into her particular facts, then how does this not kind of help her on the mootness question? Because it makes it more likely that we need to figure out whether she's ever going to have review available, and it seems like she keeps violating before we can ever get there. I think those are two different questions is the answer. Capable of repetition and avoiding review does not look to a defendant's hyper criminality. The fact that she keeps violating supervised release so quickly that she moots the order, I don't think is what gets looked to in that analysis. Frankly, the mootness issue is not something that inspires table-pounding. It's, it's just, it's strange. Typical practice is to file a notice of appeal from every revocation sentence. I myself have done that. I've argued many cases that have five case numbers by the time they get to argument because of someone who does just this. And so I think we're in a perplexing position. That said, at minimum, assuming that it is within the court's power to review, I do think now all of the facts of all of her violations are in play because the actual sentence she's serving now is the most recent one that has been justified by additional facts in the record. So I think that at minimum is the position. Do you believe that the law on this issue is clear or something more On the permissibility of the condition, I think under the Fourth Amendment, that's very clear given the Supreme Court and this court's precedents about suspicionless searches and the holding in vets that supervised releasees are on the same footing as parolees. What parole, the parolee's rights under the Fourth Amendment are pretty well understood. Johnson makes those clear in the cell phone context and she's in the same footing. With respect to the level of explanation needed, I think there is a little bit of lack of clarity there. Reardon and those cases stand for the proposition that no particular explanation is required. Bayer, in the context of a condition that was suspicionless, at least there suggested that maybe some explanation was required. But in this case, that's not a preserved issue. It's subject to plain error and so I don't think publication is necessary because the court can avoid the issue by simply saying any error was not plain. Would you make a distinction between cases that limit use of devices compared to this, which is just a search of devices? Absolutely. It seems like maybe the amount of explanation is different. Absolutely. Look, in any sentencing, this court always looks under CARDI to whether there is some explanation, but the rule is so long as there is adequate explanation in the record that a sentence will be affirmed. That is the rule that applies regardless. However, absolutely, cases that require monitoring or ex ante approval for use of computers like sales and Barsoomian, those are in a completely different category from search conditions, whether with or without suspicion. And as I was arguing at the outset, certainly a condition that requires some degree of suspicion is obviously legal under this court's precedence, and it was appropriate to impose here. Other questions by my colleague? All right. Thank you both for your argument. The case, the case just argued
judges: M. Smith, Friedland, Bastian